Case number 17-5498, Maurice Carter versus Mike Parris. Argument not to exceed 15 minutes per side. Mr. Andrew Kim, you may proceed for the appellant. Good afternoon, your honors. And may it please the court, Andrew Kim for the appellant and Maurice Carter. I'm joined by my colleague, Mr. William J. Before I begin, I'd like to reserve the court's permission two minutes for rebuttal. Thank you, your honors. The district court used the wrong ineffective assistance of counsel standard when it denied and dismissed the majority of Mr. Carter's hateful statements. Instead of considering, as Kimmelman requires, how much of the state's evidence in the case against Mr. Carter would have remained had his attorneys competently drafted a motion to suppress and later a certified question, the district court instead considered whether Mr. Carter had received bad advice about the certified question and whether that advice was prejudicial. That was not the right test. And for that reason, this court should reverse. I think there are three parts to this appeal and three different issues. I'm happy to entertain them at any time. But the three components are, first, whether there's deference to the state court decisions below or rather in the state court proceedings. Second, what the ineffective assistance of counsel standard is. And third, whether the underlying Fourth Amendment claim to that ineffective assistance of counsel claim there's merit to Mr. Carter's claim. On the first issue, we contend that there is no deference. Because while there is. I'm sorry to ask this. You in Birmingham, do you mind? Of course, Your Honor. Answering the Fourth Amendment. Yes, Your Honor. So. Sorry to do that to you. Of course, Your Honor. The Fourth Amendment issue is essentially that Mr. Carter's attorney should have stated both in the motion to suppress, which he did file as a bare bones motion, and in the certified question. He should have mentioned with specificity an argument that a locked container in Mr. Carter's vehicle, which was in the guise of a new English dictionary, they should have argued that there was no consent to break open that container and search it. But assume there's no consent. Let's just assume that. Why? Under the case law, they saw the marijuana in plain view. Yes, Your Honor. It seems to me that they can search anything in the car where they could find marijuana. Right? That is a test, Your Honor. But. And so it seems to me it's reasonable to pick this up. It's reasonable to shake it. And once they hear something in it, why can't they break it open? Well, to break that down into two parts, Your Honor. First, with respect to the standard for searching a container in the car, Ross in California versus Acevedo, which followed Ross, it seems to require that there be probable cause of the container, as you point out, contains the contraband that the police are looking for. Ross states pretty clearly that the standard for probable cause doesn't go any lower just because you're searching an automobile. Have you read our Burnett case by any chance? I haven't, Your Honor. OK. Let's stick with Ross, then. Well, can I describe Burnett to you? Of course, Your Honor. And I'd be eager to take it. So Burnett, they marijuana, find marijuana in the trunk. They pop open the trunk. They find like a Dom Perignon box. They pick it up. They shake it. OK? They hear, it doesn't sound like a bottle. So they open the box, look inside, and find drugs, money, whatever. And the Sixth Circuit says, that's fine. Why isn't that almost a synonymous situation? Well, I'd have to review the case, then. Yeah, absolutely. But take my facts. So taking the facts exactly, I was told, yeah, I think it depends on the, again, it depends on the facts that were provided. And I think on this record, I don't know the record of that particular case. But on this record, I admit that it's a very low bar to establish probable cause. I think a contraband might be in the container. But that bar hasn't been met here. In terms of the meat and potatoes of establishing probable cause, Sergeant Maynard, who inspected the dictionary, didn't say that he knew, for example, that the dictionary was used to, that books would be used to ferry marijuana, to contraband. Well, the court can assume that. But why does he have to write, in most cases, that involve cars, anywhere it's reasonable to find marijuana? You can stick a baggie of marijuana in a dictionary. You can stick it in a lockbox that is shaped like a dictionary. So why isn't that sufficient for the officer to search at that point? Well, we submit that it would be, but so long as the factual foundation to justify probable cause is laid first. And that's a very low bar here, Your Honor. But it wasn't in lay when they saw the marijuana in plain view. I mean, that's all you've got to have. You see marijuana. You believe there might be other marijuana in the car. You find a second baggie. And so you're searching the car now. Yes, Your Honor, but anything in the record to suggest that Deputy Maynard, or rather Sergeant Maynard, would have thought that this particular dictionary would have contained marijuana? Does he have to think that, or does it just have to be reasonable to find marijuana there? It would have to be reasonable to find marijuana there, but one, the record doesn't make clear that Sergeant Maynard thought it was a container to begin with. So from what we have available in the record to us, it looked like a book. And there's nothing connecting books to possible concealment of marijuana. But didn't he shake it? He did shake it, Your Honor. But at that point, that became a separate search. As we point out in our- But I thought you could search everything in a car where it could be hidden. I thought that was the standard. Where it could be hidden, but the Sergeant Maynard didn't realize that it was a container capable of containing the contraband. You could have had it underneath it. You could have had it in it, right? I could shake a book, and a baggie of marijuana could fall out. Under Bond's reasoning, Your Honor, Bond versus United States, if you needed to shake the book to conduct the search of the vehicle, perhaps, Bond makes clear that you can set aside or put it in a car and push aside bags. And in the course of doing so, you felt something. You felt potential contraband. That could be a plain feel, one might say. But this wasn't an instance of plain feel. It's not hearing, is it? I'm sorry? It's shaking, and you hear something inside. That's what it is. But then, Judge Bush, that gets to the level of manipulation. And it gets to the level of- Wait a minute, why is it manipulation? Did he pick up a box? I don't understand. Well, to be clear, Sergeant Maynard's testimony reflects that he picked up the box with the intent of figuring out what it was. And at that point, it becomes a search. Now, had he picked up the box to see if there was anything else underneath the back seat, I think that would be a different case. But that's not the record that we have. Why can they pry open a trunk? Why can officers, if they find drugs in the car, pry open a trunk? The case law doesn't make clear just the part that the officers can search whichever part of the vehicle they think might reasonably contain the contraband. And marijuana presumably fits in a car trunk, Your Honor. But a baggy presumably fits in a book, too. That's true, Your Honor. But there has to be something in the record. Because this was a book and not a container that was obvious on site, I think that's a distinction here. Sergeant Maynard. What's your best case for that, that something that's not obvious on site and can't search without probable cause? We don't have one available to us, Your Honor. But we'd be happy to find that. We can have it replied on the January 14th issue. That's fine. Go ahead. I'm sorry. So another thing about the issue of probable cause in the automobile search is that the Tennessee courts didn't really think that this was a dispositive issue. I'll refer the court to the direct appeal opinion and what the state argued below there. The state actually argued the application of the automobile exception in the direct appeal. The judge said, I think the law is pretty clear when searching a vehicle when something is plain sight and owing the law enforcement incident to this search, is what he said. And then the other judge said, we found likewise. Two points on that, Joseph. First, at that point, the motion to suppress the search had already been decided. As the TCCA pointed out in its direct appeal opinion, we're not entirely sure what that comment was because it wasn't deciding the motion before the court, which is the motion to suppress a stop. And second, that could have applied to, I think, the more reasonable reading of what Judge Bond said in that statement in dealing with the motion to suppress a stop is that the scope of the consent search included marijuana that the officers found in the vehicle. If you find marijuana and you ask for permission, because he said previously, based on the facts presented to him, you agree if you find marijuana, you don't need permission. Even if you ask for it, there's all that Supreme Court case law where they get one thing that's permissible and one impermissible. As long as they're operating under the permissible, they're fine. Yes, Your Honor. They do have permission to search. And we're not contesting that the search of a vehicle was improper. We're contesting that when it comes to a container, that inquiry becomes more particularized. In order for a sergeant major to figure out that it was in a container, you have to search it first. Remind me what the first case is. Remember the one where they searched the car and then they searched the passenger's purse and they said that was OK? Do you remember that case? Wyoming versus Houghton, Your Honor. Oh, OK, that's Wyoming. So why wouldn't that case apply here? In other words, they're now searching a passenger's purse and the Supreme Court said that's acceptable. Your Honor, again, it goes down to the particular facts of the case. And there, the facts that support the notion that the purse could contain the contraband. Here, we don't think the state even met the minimum threshold of establishing that there was a nexus between the dictionary that Sergeant Major responded. And for him to think that, or a reasonable officer to think that there was probable cause that the dictionary was capable of concealing marijuana. I concede that, had Sergeant Major said, in my 20 years of experience, I don't know how long Sergeant Major has been on the force, but in my years of experience on the force, I know that people conceal drugs in books. Had he testified to that, I think that would have been enough for probable cause, but we don't have those facts in the record before us here. But it seems to me, and tell me where I'm wrong, because I think it seems to me what you're saying is you need an independent probable cause to search the book. And in my misunderstanding of the case law that says, if you see something in plain view in a car, then you have probable cause to search the car for anything that may contain that. So if it's drugs, it's pretty much free game. Our reading of Ross Yoner is that you still need to think that the container is capable of holding the contraband that you're holding. But didn't Ross involve containers? It did, Your Honor. Did they say that on Ross? No, Your Honor, but we think that that's a reading that we get from Ross in terms of what the standard is. And to go back to the point about how the Tennessee court would have dealt with this, the record also shows that the court had been presented with this argument about the automobile exception. And the court could have said, as it did for the Fifth Amendment claim, the confession claim, the court could have said, this issue is not dispositive. The consent search, the scope of the consent, is not dispositive because we think this issue can be decided on the automobile exception. Because the search is OK under the automobile exception, this issue is not dispositive. The court didn't say that. The TCC also, in its first opinion on post-conviction review, also didn't say that Mr. Carter's claim was not credible or colorable because the claim would have been extinguished by the automobile exception. Instead, they allowed it to move forward. So we submit that the state's position that the automobile exception extinguishes any claim of prejudice is wrong. Unless the panel has any further questions, I'll just reserve the rest of my time for rebuttal. You may. Thank you, Your Honor. Thank you. Thank you. May it please the court, my name is Nick Bullduck and I represent the state of Tennessee and Warden Mike Harris in this appeal. This appeal concerns one narrow issue, specifically whether Kitchener's trial counsel provided ineffective assistance of counsel based on counsel's performance in raising the certified question of law on direct appeal following Kitchener's guilty plea. And this court should affirm the district court's judgment in dismissing the petitioner's action because the TCCA's opinion did not contradict or otherwise unreasonably apply clearly established federal law, which is Hill v. Lockhart in this instance. But it didn't even address the issue, did it? Judge Nalbanian, the issue was addressed. Specifically, in the record in the Tennessee Court of Criminal Appeals' post-conviction opinion, the issue was specifically enumerated. And then the TCCA addressed the issue in a paragraph and dismissed the claim. So the issue was properly enumerated, specified that it was observed by the court, and was addressed applying the correct Strickland and Hill standards that were put in place. Do you concede that counsel's performance was deficient? Just the part, the state does not Didn't they just file a bare-bones motion to suppress? Well, first, Judge Lepar, again, looking at the petitioner's language in his petition, this only concerns the raising of the certify question in that stage of litigation. However, counsel at the stage of the suppression proceedings did file a motion to suppress. While it may not have been the most supportive, like full case law. For example, is it true that the trial courts relied on the inventory exception? The trial courts appear to have decided the lockbox issue under the initial plain view probable cause finding from the marijuana and the paraphernalia. And then the petitioner's consent, which he provided twice during the course of the encounter with officers at this location. Would the consent extend to breaking open the lockbox? Petitioner never limited his consent in any way during either of the times that the officers asked him for consent to search the vehicle. He simply said, OK, is what the officer's testimony was. He said it was OK to search the vehicle. But before you break open someone's container, don't you have an obligation to ask them? Judge, under these facts, petitioner, as mentioned before, petitioner was given an opportunity to limit the scope of the search or to completely stop the search when he was being taken away. Right, it's different. If you say, can you search my car, if I say yes, then you can search my car. Can you break something in my car to search within it? I mean, how far does that extend? If I have a figurine, can you smash it to see if there's drugs in it? I mean, don't you think at that point the consent stops before the officers break something? Well, Judge LaPard, in this case, we would not know what petitioner's position would have been on that issue. Now, under Ross, general consent extends to the entire area in which the object of the search could be found. It's not limited by the possibility that separate accidents or opening may be required to complete the search. Now, when he shook the lockbox, he presumably heard things like envelopes or whatever contained the disk and the other stuff. He didn't hear something that sounded like rag and baggies. So why did he have probable cause, then, to break it open and search it? Judge, in the record, specifically in the motion to suppress hearing transcript, I believe it's Exhibit 5 in the state court record, the officers testified that in addition to finding marijuana in plain view upon initially arriving at the scene, the officers also found rolling papers, which is an offense under Tennessee law, possession of paraphernalia drugs. So an officer's position at that time when the lockbox search occurred, the officers had already asked for petitioner's consent once, obtained it, found an additional bag of marijuana inside the car, received petitioner's general consent to search his vehicle and everything inside it upon his being taken away for his medical emergency that he was experiencing. And then, yeah. If you could see through the lockbox and see if it was a CD, could you still break it open? So let's say it's a clear lockbox, and what you see inside is CDs, and it's locked. Can you break the lock? Judge Lepar, in this specific case, I really would not have a position on that. However, What if the lockbox was outside the car? Could you pick it up and search it? It's now outside the car. So he gave consent to search the car. On the way out, he drops the lockbox. You take him away because he's having this heart attack, and you take him away, and he drops the lockbox. Can you show that? If the officer had seen the lockbox fall off of the petitioner's body, Mr. Mott, the state's... But he only gave consent to search the car, not his body. Judge Lepar, that is true. But under the facts of this case, the point would be an apposite. But... Should the independent probable cause have searched the lockbox absent consent? Well, the independent probable cause would have arisen from the finding of the marijuana and the rolling papers within the plain view. And then, considering the petitioner was inside the vehicle upon the officer's initial approach, and then stated that it was, that it was his vehicle... So you're arguing for the automobile exception? Is that implied here? There's an Albandian. The state just argues that while the suppression, all the suppression arguments are not encompassed within the scope of the petitioner's claim and the scope of the COA granted to Claim 2 of the petition. The lockbox search was proper because of the probable cause supplied by the marijuana and plain view, the rolling papers, the fact that additional marijuana had been found. Under the state... So the automobile exception. Under the automobile exception, I didn't argue that. But I mean, under the state court specifically found that it was just using plain view and then the consent. There wasn't much elaboration on the motion to suppress the hearing. And under the facts of this case, the lockbox search was lawful, albeit not encompassed within the course of the petitioner's claim. Let me ask you this, if they, this Fourth Amendment debate, I guess, goes to whether there was some prejudice here. If they are right that the certified question was improperly drafted, do they have to prove prejudice? Do they have to show prejudice from that? Or is it presumed? Judge Malbanian, under the Hill v. Lockhart standard, which is the applicable standard in this case to do a petitioner's guilty plea at this point in the proceedings, the petitioner would have to prove that there was a reasonable probability that but for trial counsel's allegedly deficient performance he would not have pleaded guilty and would have proceeded to trial. And it's... It's the appellate counsel's deficient performance, isn't it? I mean, it's appellate, it's the appellate counsel who failed to draft the right question and therefore denied him the right to an appeal, right? Judge Malbanian, the question under Tennessee law, the way that the certified question appeals are conducted, three different parties have to agree to a certified question. That includes the trial courts, and in this case, because there were charges standing for two different counties, two different trial courts had to approve the certified question on the judgment. It actually has to be contained on the judgment of conviction. And the state also has to agree that this question was dispositive. Now... But who participates in the certified question? I'm sorry, I thought both trial counsel and appellate counsel did. Well, trial counsel acted as appellate counsel. I don't know if that was as specific as... Okay, so, but they've got two independent claims. One, right, ineffective assistance of trial counsel. Second, ineffective assistance of appellate counsel. If the certified question doesn't sufficiently present the claim, their argument is we should presume prejudice. Why are they wrong? Prejudice should not be presumed, Your Honor, because Petitioner did... There is ample evidence in the record suggesting that Petitioner understood and employed the risk that he was taking when he decided to plead guilty with the condition that he could appeal his... But if I plead guilty with the condition, okay, so the only reason I'm guilty is because the police searched my car, because if they don't have the search, they don't have the evidence, right? We're not talking about the marijuana here. We're talking about the child foreign insurance. And so, only reason is that they found this stuff in the lockbox. That's it. So, I'm pleading guilty because I know I'm dead to rights if they can use that. But I want that issue appealed because if I win that on appeal, then I'm getting that conviction thrown out. Why? Doesn't the issue have to be framed, right, so the Court of Appeals can make a determination, and especially in Tennessee, isn't it waived if it's not in there? They'll only decide what's put in there if I decide, right? Under the applicable Tennessee rule of criminal procedure governing certified questions, a certified question has to be necessarily dispositive of the case. Now, in this case, the petitioner- But it would be dispositive. Judge, can you repeat the question? It would be dispositive, right? If they win the motion to suppress, they win the, put the marijuana charges aside, they win the big charge. That's what he cares about. Now, the, I mean, as applied, petitioner received, under the facts of this record, petitioner received everything that was objectively promised to him. So trial counsel, who was acting as appellate counsel, after they conducted the suppression hearing, told the petitioner, and petitioner signed a letter stating- Okay, let's say the counsel promised him whatever. I don't care what he promised him. What I'm saying is, if he doesn't frame the issue right, am I right in Tennessee, the Court of Appeals will not decide it. If I frame, if there's issues A and B, and I only write issue A in my questions presented, the Tennessee Court of Appeals will not decide question B. Right? I mean, isn't that what happened here? They said, we're not gonna discuss the lockbox issue, because it's not in the certified question. Didn't the Court of Appeals say that specifically? The Tennessee Court of Criminal Appeals did not specifically address the lockbox issue based on the certified question as written now. Also, another thing that was found to be a determining factor in the Court of Criminal Appeals- Doesn't it matter, I'm sorry to interrupt you, I apologize, but doesn't it matter then whether we presume prejudice or not? Because if we presume prejudice, they win. I mean, that's a big issue. Judge Stavar, yes, it would definitely matter that if prejudice was presumed or not, a prejudice should not be presumed here, simply because- But why, in all those cases, right, the Supreme Court said, like, if you don't timely appeal, you lose your ability to present the issue, and the Supreme Court said, we should presume prejudice in that situation. Am I right or wrong? Under, in that situation, yes, it did. So why is this any different? The Tennessee Court of Appeals said, we're not gonna consider it, just like it's done timely. So why shouldn't we presume prejudice? Well, prejudice should not be presumed because petitioner did receive an appeal, albeit it didn't result in the overall result that he may have assumed he was going to be receiving based on the lockbox suppression issue. But counsel had thoroughly gone over his options of whether he should proceed to trial on 50-some-odd child sex crime, sex criminal charges over two different counties in Tennessee. All of this information was thoroughly provided to petitioner, and petitioner acknowledged this by signing that letter just before his guilty plea. He did receive a certified direct appeal after pleading guilty. Okay, so let's say he files a notice of appeal, files a certified question, perfect, and doesn't file a briefing. Should I presume prejudice in that situation? In that situation, prejudice is more than likely to presume the same? So I'm not sure I follow what the distinction is here. In other words, he didn't present the issue. So I don't agree with half the issue. Well, just the part. Right, we all agree the lockbox is all that matters. And so why shouldn't we presume prejudice in that situation? Prejudice should not be presumed in this case because of the facts. As stated, petitioner, well aware of his options. He was well aware of the evidence, the lockbox, all of the evidence derived from it. But it's not the petitioner's role. He has counsel, right? It's counsel's role. Like he's aware of it, I'm on one issue preserved. I want you to fight the lockbox. Okay, I'm gonna fight the lockbox. Then I don't appeal the lockbox. And you're saying, well, he knew of the danger. Well, just the part. I see my time is running short. If I could address your question. In that case, the state would also like to point to the deficient performance from under Strickland v. Washington, where this record shows that counsel had looked at various certified questions that had been sent to the Tennessee Court of Criminal Appeals. And based on his research, he believed that the way that he drafted it, where it wasn't too broad or too narrow, that it was sufficient to encompass the lockbox search, albeit without specifically stating lockbox in the question. My time is up. Thank you very much, counsel. We would ask the court to confer on the judgment. I'll focus my rebuttal, actually, on the ineffective assistance of public counsel claim. My colleague on the other side says that the Hill standard should apply here. One, that's not true. It's, we contend it's either Flores or Kaga, or if the court sees that it's a merits issue, then it's something akin to what the court implied in Joshua. We submit that, Judge, you're absolutely right. This was a deprivation of the proceeding, not a deprivation of an argument. And here- But he got an appeal, didn't he? I mean, why isn't it more like a question of, I raised three issues, I should have raised the fourth, and you just evaluate whether you should have, as a strategic matter, raised the fourth issue? Because it was a deprivation of jurisdiction, Your Honor. Because the certified question didn't contain a ministerial item that the certified question needed to contain here at the trial court's rationality, this fourth disposition might reach. Because it didn't in the ministerial, they decided to put some language in and not other language in. They decided not to mention the law box or whatever it was. Why is that not? He still gets an appeal. It's not like the case where you fail to file a brief, where you don't file a notice of appeal. It's a case where you got an appeal, you just didn't bring out the right issue. Well, Florence Ortega does talk about and does consider whether the omission was ministerial in nature. And here, Tennessee law makes one thing clear, which is that you have to include the dispositive reason of the trial court. And the reasons that you include have to be dispositive. What did the trial court rely on in its decision-making? And that was absent here. So there's no discretion as to what the trial court decided. The trial court's decision is what it is. And here, they failed to list that decision in the certified question. They didn't say that there was no consensus to search the law box or to break it open. What if we decide on this record, what if we decide on this record, there's no way you can win. You still win on the appellate plane. Does that make sense? There's no prejudice under any scenario. If there's no way you can win, no, it just aren't. But if there's uncertainty, and this factual record, I admit, is very messy. If there's uncertainty as to how this claim would be sorted out, especially given that the state didn't argue probable cause in, let me backtrack, say, first, Florence Ortega doesn't require us to prove that we need to win. But assuming that it's not Florence Ortega, the fact that there's some uncertainty here as to whether there's probable cause to search this container, and whether the automobile exception would've applied, I think that can be sorted out by giving this court a new appeal, or rather letting him file for a new certified question, and letting the TCC answer those questions definitively, rather than dealing with a messy record before this court. And does the panel have any further questions? Thank you, Your Honor. Mr. Kim, I think you were CJA appointed, is that correct? I was, Your Honor. Are you pro bono, too? I am, indeed, Your Honor. Well, we can't tell you how much we appreciate your thorough and thoughtful representation of your client. It's the service of the Sixth Circuit, and we greatly appreciate it. Thank you, and thank you. Okay, Mr. J., some questions about the E.B. Ha ha ha ha ha ha.